**IT IS ORDERED as set forth below:**

Date: **November 13, 2019**



_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | CASE NO. 18-63282-WLH |
| ) | |
| HRN GROUP, LLC, ) | CHAPTER 7 |
| a/k/a HOMERETENTION, ) | |
| ) | JUDGE WENDY L. HAGENAU |
| Debtor. ) | |
| ) | |
| ) | |
| HRN GROUP, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ADV. PROC. NO. 19-5312 |
| ) | |
| WELLS FARGO BANK, NATIONAL ) | |
| ASSOCIATION as Trustee for Soundview Home ) | |
| Loan Trust 2007-OPT1, Asset-Backed Certificates, ) | |
| Series 2007-OPT1, ET AL., ) | |
| ) | |

**ORDER DENYING AFFIDAVIT OF DEMAND FOR RECUSAL OF JUDGE**

Danitta Ross Morton, allegedly on behalf of the Debtor, filed an "Affidavit of Demand for Recusal of Judge Wendy L. Hagenau" on October 24, 2019 [Docket No. 93]. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.

1

## BACKGROUND

This Chapter 7 case was filed on August 7, 2018, by HRN Group, LLC a/k/a Homeretention. The petition was filed without counsel and signed by Ms. Morton as the "owner". Some schedules were filed on September 4, 2018, but a schedule of property and assets of the Debtor was not filed until November 1, 2018. Nevertheless, on September 7, 2018, the first of several motions for relief from stay was filed in the case. Wells Fargo Bank, as trustee, filed a motion seeking relief from the stay to initiate and conclude a dispossessory proceeding on property located at 4596 Meadow Creek Path, Lithonia, Georgia on which Wells Fargo had foreclosed in 2016 ("Wells Fargo MFR") [Docket No. 13].

Several days later, on September 10, 2018, Ms. Morton, allegedly on behalf of the Debtor, filed a "Notice of Complaint for Violations of Automatic Bankruptcy Stay, Damages and Sanctions Against Creditor for Willful Violation Pursuant to section 362(a)(h)(k)". This Complaint was directed at JPMorgan Chase Bank, N.A. and its law firm McCalla Raymer Leibert Pierce LLC arising out of an alleged foreclosure post-petition of property located at 6433 Parkway Trace, Lithonia, Georgia [Docket No. 16]. In response, JPMorgan Chase filed a motion for relief from stay, seeking to have the stay annulled *nunc pro tunc* in order to validate the foreclosure sale conducted on September 4, 2018 ("JPMorgan MFR") [Docket No. 21]. The motion recited that the current case was the seventh bankruptcy case affecting the property, including Case No. 16-66337 filed by Ms. Morton individually in which she received a discharge on January 13, 2017, two cases filed by her son Lamont Ross, and three cases filed by Nu Alliance Company in Atlanta and in Tampa. The motion alleged further that the loan on the property was 25 payments delinquent. On September 25, 2018, the Court entered an Order to show cause why the case should not be dismissed, directing the Debtor to retain counsel or appear before the Court on October 4,

2

2018, to explain the lack of counsel. In that notice, the Court cited to numerous Eleventh Circuit cases requiring a corporation to appear through an attorney ("Show Cause Order").

On September 27, 2018, the Wells Fargo MFR came before the Court for hearing. At that hearing, Ms. Morton appeared. The Court informed her that since the Debtor was a corporation, it needed an attorney in order to participate in any court proceedings. Nevertheless, the Court allowed her to speak that day with the admonition that the Debtor must retain counsel for any future hearings and that Ms. Morton would not be allowed to speak on behalf of the corporate Debtor. Ms. Morton argued the Debtor was a limited liability company and not a corporation and that the Debtor need not obtain counsel. The Court disagreed with her position. At this first hearing, the Court also explained to Ms. Morton that the case was one filed under Chapter 7 of the Bankruptcy Code. The purpose of a Chapter 7 bankruptcy is to allow a trustee to investigate the assets and liabilities of the debtor, collect any assets which have value over and above the amount of any debts secured by the assets, and liquidate those assets and make distributions to creditors. With respect to the Wells Fargo MFR, the Court noted the foreclosure had already occurred and the matter to be resolved was possession of the property, the Trustee had no objection to the lifting of the stay, and litigation between the parties should continue in state court. The Court therefore granted Wells Fargo's motion.

At the Show Cause hearing on October 4, the Debtor did not appear with counsel. Instead, Ms. Morton again appeared and stated her contention that a limited liability company was not a corporation and the Debtor was not required to obtain counsel. The Court reiterated that counsel was required, citing to Ms. Morton several Eleventh Circuit and other court decisions to that effect. In response to the Order to Show Cause, the Chapter 7 Trustee responded that based on his analysis of the case, the case could be dismissed and if dismissed should be dismissed with prejudice. The Trustee noted the Debtor had not produced all the documents requested, and he had located

3

numerous cases filed around the country by related debtors affecting the properties identified by this Debtor. Nevertheless, the Court gave the Debtor until October 24, 2018 to obtain counsel. On October 24, 2018, Kim King appeared as counsel on behalf of the Debtor, and the Show Cause Order issued earlier by the Court was satisfied.

The Debtor finally filed its complete schedules and statement of financial affairs on November 1, 2018. The Debtor identified 12 pieces of real property in which it allegedly held an "equitable interest". The Debtor's equitable interest ranged from 5% to 50%. The schedules also reflected that Ms. Morton was a creditor in the amount of $1.3 million, and the Debtor was shown as holding a "security interest lien" in all of the properties. The Debtor was not identified as the titleholder of any of the properties.

On December 11, 2018, the JPMorgan MFR to validate the prior foreclosure sale on 6433 Parkway Trace came before the Court for an evidentiary hearing. Ms. King represented the Debtor. The Court heard evidence from Ms. Morton on behalf of HRN and from a witness on behalf of the foreclosing creditor. Ms. Morton testified she was the sole member of the Debtor. She testified to multiple bankruptcy filings by various entities involving the property and several transfers of the property at issue. The property at issue was also involved in the bankruptcy case of her brother which was filed in New York. Ms. Morton testified that HRN, the Debtor, obtained its interest in the property by virtue of a UCC filing, not anything filed in the real estate records, immediately prior to the filing of the bankruptcy case. At the conclusion of the hearing, the Court denied HRN's motion for damages for any stay violation and granted the JPMorgan MFR, annulled the stay *nunc pro tunc* to the date of the bankruptcy filing, thereby validating the foreclosure sale to the extent it was otherwise valid under Georgia law, and made findings that the bankruptcy case was filed to delay, hinder, and/or defraud a creditor as contemplated by 11 U.S.C. § 362(d)(4)(b). The Court

found the property at issue had been the subject of numerous property transfers and multiple bankruptcy filings.

On January 8, 2019, the Chapter 7 Trustee filed his Report of No Distribution representing that he had "made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law."

On February 7, 2019, Bank of America filed a motion for relief from stay as to the property located at 4508 Meadow Vista Place ("BOA MFR") [Docket No. 61]. The motion alleged this property was also the subject of numerous transfers and the filing of numerous "UCC financing statements" allegedly transferring interests in the property to the Debtor and Nu Alliance Corporation among others. The motion also alleged no payments had been made on the loan secured by the property for 47 months, and this was the seventh bankruptcy filing affecting this property. A hearing was set on the motion for March 7, 2019. However, on March 1, 2019, Ms. King filed a motion to withdraw as attorney of record for the Debtor. The motion to withdraw omitted several items required under the local bankruptcy rules, and it was not immediately granted. At the hearing on March 7, 2019, Ms. King appeared to explain to the Court that she had requested to withdraw. No opposition to the BOA MFR was stated, and relief from the stay was granted to Bank of America. The Court again made the findings required under 11 U.S.C. § 362(d)(4), that the case was filed as part of a scheme to hinder, delay and/or defraud a creditor resulting from multiple bankruptcy filings and multiple transfers of the property.

All was quiet in the case until August 5, 2019, when Ms. Morton, allegedly on behalf of the Debtor, filed two "Affidavits of Notice and Demand" with respect to the Trustee John Lewis and the undersigned Judge, requesting taxpayer identification numbers and Social Security numbers [Docket Nos. 68 and 69]. On the same day, Ms. Morton, allegedly on behalf of the

5

Debtor, filed a document entitled "Challenge of Jurisdiction". In this document, she challenged the jurisdiction of the Court and asked that all prior orders be voided [Docket No. 70]. Also on August 5, she, allegedly on behalf of the Debtor, filed a document entitled "Void Order" wherein she appears to request that all writs and court process include a seal of the Court and a signature of the Clerk and the Judge [Docket No. 71]. She again alleged the bankruptcy court had no jurisdiction. The document states further,

> It is an established fact that the United States Federal Government has been dissolved by the Emergency Banking Act, March 9, 1933, 48 Stat. 1, Public Law, 89-719; declared by President Roosevelt, being bankruptcy and insolvent. H.J.R. 192, 73rd Congress in session June 5, 1933 – Joint Resolution To Suspend The Gold Standard and Abrogate The Gold Clause dissolved the Sovereign Authority of the United States and the official capacities of all United States Governmental Offices, Officers, and Departments and is further evidence that the United States Federal Government exists today in name only. Furthermore the Bankruptcy Court has no authority to remove a stay on any unsecured loans.

Ms. Morton, allegedly on behalf of the Debtor, also filed an "Affidavit of Demand for Original Note, Original Security Agreement Assignment of Debt and UCC Statement" demanding the foregoing with respect to all of the properties identified in the Debtor's bankruptcy case [Docket No. 72]. Finally, she, allegedly on behalf of the Debtor, filed a "Notice and Declaration of Revocation of Power of Attorney Notice and Declaration of Fraud" appearing to state generally that any powers of attorney were extinguished [Docket No. 73].

On September 26, 2019, a motion for relief from stay was filed by Wilmington Savings Fund Society FSB, as trustee, ("Wilmington") with respect to the property located at 6236 Katelyn Park ("Wilmington MFR") [Docket No. 76]. This motion alleges that 126 payments on the loan secured by this property have been missed. A hearing was scheduled on this motion for October 17, 2019. In the meantime, on October 1, 2019, the Debtor, acting only through Ms. Morton, filed an adversary proceeding against Wells Fargo, JPMorgan Chase, Bank of America, Wilmington Savings Fund Society, the State Court of DeKalb, the Magistrate Court of DeKalb County, the

6

DeKalb County Marshals Office, the Secretary of Housing and Urban Development, and others alleging that HRN had been harmed by the defendants' participation in foreclosures and other collection matters involving the property in which HRN allegedly has an interest. In the minutes before the hearing was scheduled to commence on October 17, 2019, Ms. Morton, allegedly on behalf of the Debtor, filed an Affidavit of Opposition to Motion for Relief from Automatic Stay [Docket No. 80]. The response contends that Wilmington is not the true holder of the note and security deed and should not be permitted relief from the stay.

At the hearing, Ms. King appeared and reiterated her need to withdraw as counsel for the Debtor. Ms. Morton, as the sole member of the Debtor, agreed that Ms. King could withdraw and the Court permitted her withdrawal at that time. Ms. Morton asked to speak in opposition to the motion for relief from stay. The Court reminded her of the earlier hearings and rulings requiring the Debtor to obtain counsel in order to participate in Court hearings. Since counsel withdrew that morning, however, the Court permitted Ms. Morton to speak on a limited basis as to her opposition to the Wilmington MFR. Ms. Morton asked that the Wilmington MFR be denied and instead that the matter be resolved in the adversary proceeding. The Court granted the Wilmington MFR, explaining to Ms. Morton that because the Debtor was in a chapter 7 case which was not meant for reorganization and because the Trustee had already filed a report of no distribution stating that none of the assets had value for creditors, it was best the stay be lifted and the disputes between the parties resolved in state court. Ms. Morton then challenged the Court's jurisdiction to hear the matter, in response to which the Court pointed out that HRN (with Ms. Morton's signature) had filed the bankruptcy case invoking the jurisdiction of the Bankruptcy Court, but that if the Debtor wanted the case dismissed that could be accomplished. Ms. Morton wanted to submit various exhibits to the Court, but the Court confirmed that the documents were already filed on the docket and no need existed for them to be submitted during the hearing. Ms. Morton then claimed that

7

her filing of an adversary proceeding created an injunction against any actions being taken as to the property. The Court explained that the filing of an adversary proceeding did not create an injunction unless an injunction was requested and granted by the Court. Ms. Morton contended again that the Movant was not the holder of the note authorized to foreclose. The Court explained again to Ms. Morton that since she was not an attorney she was not authorized to speak on behalf of the corporation and the matter was concluded [Docket No. 99].

Ms. Morton immediately went to the Clerk's office and filed the following:

"Affidavit of Fact of Challenge of Jurisdiction for Lack of Subject Matter Jurisdiction Want of Jurisdiction" [Docket No. 81] – challenging the Court's jurisdiction.

"Affidavit of Notice of Filing of Violation Warning Denial of Rights Under Color of Law Pursuant to 18 USC §242; 18 U.S.C. §245; 42 and U.S.C. §1983" [Docket No. 82] – allegedly preserving any rights of HRN to pursue claims for violations of various statutes.

"Affidavit of Demand/Request Notice for Complete IRS Forms" [Docket Nos. 83, 84 and 85] – again requesting tax ID information from the Judge, the Trustee and Radha Gordon

"Affidavit of Fact Common Law / Freedom of Information Act Demand/Request / Privacy Act Demand/Request Registration Statement Demand/Request for Foreign Agents Registration Act (FARA) of 1938/Anti-Bribery Statement" et al. – Docket Nos. 86-88 and 90 addressed to the Trustee, Radha Gordon, Wilmington, and Judge Wendy L. Hagenau.

"Affidavit of Notice of Filing to the State Bar of Georgia Grievance Filed Complaint Against Judge Wendy L. Hagenau, John Lewis Jr, Radha Gordon, Et Al." [Docket No. 89] attaching a copy of a State Bar grievance filed.

Finally, on October 24, 2019, Ms. Morton, allegedly on behalf of the Debtor filed an "Affidavit of a True Bill to Be Filed on Demand" addressed to the Clerk [Docket No. 94] and an "Affidavit of File on Demand and Affidavit of Complaint Against M. Regina Thomas …" [Docket No. 95], as well as the Affidavit to Recuse at issue here. The Affidavit to Recuse is also filed in the above-styled adversary proceeding at Docket No. 9.

In the recusal request, Ms. Morton alleges generally this Judge is biased and violated her oath of office, and violated Ms. Morton's (or the Debtor's) due process and equal protection rights. She alleges the following specific acts of the undersigned judge:

1. Did not allow me to give a testimony to present a defense.
2. Would not accept/hear my testimony and "stated she was not accepting testimonies today."
3. Threatened to throw out my case if I did not keep quiet.
4. Did not allow me to enter Exhibits into court's evidence at the time of the hearing.
5. Evidence was withheld by not allowing evidence to be entered for my defense and then ruled in the opposing party's favor.
6. Removed the stay on an unsecured debt.
7. Judge refused to answer any of my questions and once again respondent was threatened to be quiet or the consequence would be dismissal of the respondent's case.
8. Judge said she was doing me a favor by hearing my case.

## JUDICIAL RECUSAL

Recusal of this judge from hearing any further matter in this case is governed by 28 U.S.C. § 455(a), which provides, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The appropriate test under Eleventh Circuit law is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988). See also Mantiply v. Horne (In re Horne), 630 Fed Appx. 908, 910 (11th Cir. 2015) cert denied, 136 S. Ct. 2512 (2016) (cites omitted). The Court will "not consider the perceptions of idiosyncratic, hypersensitive, and cynical observers." Id. (cites omitted). And, "the judge need not recuse himself based on the 'subjective view of a party' no matter how strongly that view is held." United States v. Sammons, 918 F.2d 592, 599 (6th Cir. 1990) (cites omitted). Further, a judge is not "'recusable for bias or prejudice [when] his knowledge and the opinion it

9

produced were properly and necessarily acquired in the course of the proceedings.'" Tucker v. Mukamal, 616 Fed. Appx. 969, 971-72 (citing Liteky v. United States, 510 U.S. 540, 551 (1994)).

Section 455 "does not invite recusal whenever it is requested by a party." Guthrie v. Wells Fargo Home Mortgage, N.A., 2015 WL 1401660, at *3 (N.D. Ga. March 26, 2015). In fact, "there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." Id. (cites omitted). "[C]ourts must exercise great care in considering motions for recusal so as to discourage their use for purposes of judge shopping or delay[.]" Barna v. Haas (In re Haas), 292 B.R. 167, 175 (Bankr. S.D. Ohio 2003).

Importantly, "it is the facts, not the movant's allegations, that control the propriety of recusal." Guthrie, 2015 WL 1401660, at *3. "Recusal cannot be based on 'unsupported, irrational or highly tenuous speculation.'" United States v. Cerceda, 188 F.3d 1291, 1293 (11th Cir. 1999) (cites omitted). Furthermore, allegations made under 28 U.S.C. § 455 need not be taken as true. Weatherhead v. Globe International, Inc., 832 F.2d 1226, 1227 (10th Cir. 1987). Finally, motions to recuse under section 455 "are typically decided by the presiding judge." Guthrie, 2015 WL 1401660, at *3.

The Motion alleges this Court is biased against the Debtor and Ms. Morton. Bias and partiality, such as form a basis for recusal, can arise either because the judge has learned information outside the course of judicial proceedings which forms the basis of the judge's opinion or where even from information provided only in court, the judge forms an opinion "so extreme that fair judgment appears impossible." Haas, 292 B.R. at 176. All of Ms. Morton's allegations are based on actions the Court took on motions and matters before the Court, all of which are based on the evidence or arguments presented in connection with the various motions. Ms. Morton has not alleged, and cannot allege, that the Court has any information about the matters on which it has ruled from any source other than what has been presented to the Court. The Court's opinions

10

which have been formed as a result of the Debtor's and Ms. Morton's actions and inactions in this case do not create a basis for recusal.

The allegation seems to be that this judge cannot render a fair judgment. This is not true. Moreover, the Supreme Court has recognized that recusal is not required even if the judge has formed a negative opinion of the party, except in rare circumstances.

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." (cite omitted). Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.

Liteky, 510 U.S. at 550-51. Moreover, the allegations are conclusory and not supported by facts.

The Court will review each of the allegations made by Ms. Morton, allegedly on behalf of the Debtor. Ms. Morton complains generally that the Court did not let her participate in the October 17, 2019, hearing to the extent she wished. She complains that the Court refused to take testimony, limited her comments, did not accept exhibits, and wrongfully lifted the automatic stay. Ms. Morton's allegations are factually wrong in some instances, practically wrong due to her lack of understanding of the process, and in any event do not form a legal basis for recusal of the Judge.

**Requirement of Counsel.**

Ms. Morton continues to view herself and the Debtor as one. Even her motion refers to the failure of the Court to allow the respondent to put forth certain evidence and that her personal liberties were affected. But Ms. Morton was not the respondent to the Wilmington MFR, the Debtor was, and Ms. Morton is not the Debtor. Ms. Morton is simply a member of the Debtor and

11

while that may align her interests with the Debtor's in some respects, it does not make her the Debtor or authorize her to speak on behalf of the Debtor in Court. This Court has informed Ms. Morton since the outset of the case that the corporate Debtor must have counsel and that she cannot appear on behalf of the corporate Debtor. She was informed of this personally on September 27, 2018 and October 4, 2018 and through an Order to Show Cause. She was given until October 24, 2018 to obtain counsel for HRN. While she did so initially, her counsel moved to withdraw, no one objected, and counsel was allowed to do so.

It is well established in the Eleventh Circuit that a corporation may not appear in federal court without an attorney. National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Company, 748 F.2d 602, 609 (11th Cir. 1984). In that case, the court pointed out that while individual parties may plead and conduct their own cases personally pursuant to 28 U.S.C. § 1654, a corporation and its sole shareholder are still "separate legal persons". The court goes on to explain the rationale for requiring a corporation to have counsel:

> This rule ensures that a licensed attorney, an officer of the court, is responsible for conducting the corporation's litigation. It protects the court and the public from unscrupulous and irresponsible behavior. In this case, for example, Patterson continually made unwarranted personal attacks on the court and opposing counsel, repeatedly misled the court as to the state of the record, and raised frivolous motions and objections. An attorney would have been deterred from engaging in such behavior because of his obligations to the court and his fear of the sanctions that might otherwise be imposed by the court and the bar.

Id. That is exactly what has happened in this case because the attorney retained by HRN found it necessary to withdraw in order to observe her obligations to the bar. That withdrawal did not stop Ms. Morton from advocating positions Ms. King (Debtor's attorney) determined were inappropriate. The Eleventh Circuit's position was reaffirmed in Palazzo v. Gulf Oil Corporation, 764 F.2d 1381, 1385 (11th Cir. 1985), cert. denied, 474 U.S. 1058 (1986). There, the court confirmed that because a corporation is an artificial entity that can only act through agents, it

12

simply cannot appear in court acting "pro se". The court stated further that this applies even when the person seeking to represent the corporation is its president or major shareholder.

Ms. Morton argues that a limited liability company is not a corporation and not bound by the rule requiring counsel. However, the Georgia Court of Appeals has held that a Georgia limited liability company is a corporation that does require separate representation. Winzer v. EHCA Dunwoody, LLC, 277 Ga. App. 710, 713-14 (2006) (cites omitted). There, the Court of Appeals stated

> Because of the similarities between limited liability companies and corporations, we conclude that the rationale in the holding of [Eckles v. Atlanta Technology Group, 267 Ga. 801, 805(2) (1997)] should, and does, apply to limited liability companies. Like a corporation, a limited liability company is a business entity that protects its members from personal liability for business debts. Like a corporation, a limited liability company can act only through its agents. Like a corporation, allowing a limited liability company to be represented in court by a non-attorney agent would permit the practice of law by an unlicensed layman who is not subject to the discipline of the court. And like those who accepted the benefits of incorporation, those who accept the benefits of a limited liability company must also accept its burdens, including the need to hire counsel.

Id. at 713. In this case, there is no dispute that the Debtor is a limited liability company, and Ms. Morton so acknowledges. She also has acknowledged that she is not an attorney. The petition filed by HRN is filed on the form for a non-individual debtor. The petition shows a tax ID number which is a corporate ID number as opposed to a Social Security number, and the box "corporation" is checked. It is clear therefore that HRN Group, LLC is a different entity from Ms. Morton, and it must have representation in order to participate in court proceedings. Other bankruptcy courts have held the same. See In re BTR Properties, LLC, 2012 WL 1565239 (Bankr. D.S.C. May 21, 2012); In re Railyard Company, LLC, 572 B.R. 766, 773 (Bankr. D.N.M. 2017).

13

**Participation in Hearing.**

The Court permitted Ms. Morton to "briefly" state her opposition to the Wilmington MFR though, given that the Debtor's counsel had been permitted to withdraw. The Court acted within its discretion, however, to limit the presentation made by Ms. Morton since she was attempting to represent the Debtor and was not counsel. Notwithstanding her allegations in the Motion to Recuse, Ms. Morton raised opposition to the Wilmington MFR, which the Court heard. But the Court declined to take extensive statements from her given she was not an attorney and testimony regarding the holder of the note was not needed. The Court explained to her on October 17 the need to have counsel; the Court responded to Ms. Morton's contention that it did not have jurisdiction; the Court responded to Ms. Morton's contention that her filing of an adversary proceeding created an injunction on the property at issue. Ms. Morton's contention that the Court did not allow her to speak and did not answer her questions is simply wrong.

Her characterization of the occurrences at the hearing on the Wilmington MFR are also inaccurate. Ms. Morton contended that the Court lacked subject matter jurisdiction and that because she had challenged jurisdiction the Court could not proceed on the Wilmington MFR. But the Court explained that HRN, as the Debtor, invoked the jurisdiction of the Bankruptcy Court by filing the bankruptcy case and therefore the Court had jurisdiction to handle and decide the motion for relief from stay, which is a core matter under the Bankruptcy Court's jurisdiction. 28 U.S.C. § 157. The Court did not threaten to "throw out the case" if she did not keep quiet, but simply stated the case could be dismissed if the Debtor chose. Ms. Morton is also in error with respect to her desire to enter exhibits into evidence. Ms. Morton stated she wished to enter into evidence documents that she had already filed on the docket. The Court's response was that since they were already on the docket, there was no need for them to be entered again into evidence. Finally, Ms. Morton's allegation that the Court said it was doing Ms. Morton "a favor by hearing my case" is

14

mischaracterized. What the transcript reveals is the Court pointed out to Ms. Morton that she had no authority to speak on behalf of the Debtor and the Court was not obligated to hear anything from her, all of which remains accurate. Ms. Morton stated she wanted to give more testimony, which the Court declined. Her "testimony" on the standing of Wilmington to foreclose was not relevant to the Court's decision as described below and suffered from the continuing issue of the Debtor lacking counsel.

Ms. Morton was not authorized to speak on behalf of HRN Group, LLC. She had been advised of this point for over a year. Nevertheless, the Court agreed to hear a "brief" statement from her. The Court responded to her objection that the matter should be delayed pending the outcome of the adversary proceeding, and answered her questions about jurisdiction and an injunction. The Court explained the basis for the ruling. The Court noted the exhibits Ms. Morton wished to submit were already on the docket and had been viewed by the Court. There is simply no factual basis for Ms. Morton's allegations that the Court did not allow her to participate in the hearing, particularly since she had no right to participate on behalf of the Debtor.

**Nature of Motion at Issue.**

As a practical matter, Ms. Morton appears to misunderstand the nature of the bankruptcy proceeding which HRN Group, LLC invoked and the effect of an order granting relief from the stay. The Debtor filed a case under Chapter 7 of the United States Bankruptcy Code. Chapter 7 is known as the "liquidation" chapter. 1 Collier on Bankruptcy ¶ 1.07[1][a]; 6 Collier on Bankruptcy ¶ 700.01. A trustee is appointed in every case whose task it is to investigate the assets and liabilities of the debtor and reduce such assets to money which can be distributed to unsecured creditors. See 11 U.S.C. 704(a). Many, if not most, Chapter 7 cases are "no asset" cases, which means the debtor does not own assets which have value in excess of any liens on the property. Therefore, as a practical matter, there are no assets to liquidate and reduce to money for distribution

15

to unsecured creditors. Importantly, only individuals are entitled to a discharge in Chapter 7 cases. 11 U.S.C. § 727(a)(1).

As pointed out by the bankruptcy court in Delaware in <u>Mother African Union Methodist Church v. The Conference of AUFCMP Church</u>, 184 B.R. 207 (Bankr. D. Del. 1995),

> the objective of a Chapter 7 case is to cause the appointment of an independent trustee to marshal and liquidate the assets of the estate for pro rata distribution among the classes of creditors. It is designed to promote equal treatment among classes of creditors versus the result produced outside of a bankruptcy when creditors who are swifter and more aggressive in their collection efforts benefit at the expense of the other creditors.

<u>Id.</u> at 218. "Corporate chapter 7 cases serve a limited purpose. Because the debtor receives no discharge, the 'fresh start' policy of the bankruptcy laws is not involved. The only purpose of the case is to permit the fair and orderly liquidation of corporate assets, 'and a no-asset chapter 7, of course does not implicate this policy.'" <u>In re Int'l Zinc Coatings & Chemical Corp.</u>, 355 B.R. 76, 85 (Bankr. N.D. Ill. 2006) (citing <u>In re American Telecom Corp.</u>, 304 B.R. 867, 869-70 (Bankr. N.D. Ill. 2004)). <u>See</u> <u>also</u> <u>In re Lang</u>, 398 B.R. 1, 4 (Bankr. N.D. Iowa 2008). A no asset corporate Chapter 7 case serves no bankruptcy purpose.

Such was the case here. After a trustee conducts the 341 meeting of creditors and investigates the debtor's assets and liabilities, the trustee will either proceed to liquidate the assets if they have value or file a "report of no distribution". In this case the Trustee filed a Report of No Distribution on January 8, 2019. The Trustee's Report indicates that he has "made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and there is no property available for distribution from the estate over and above that exempted by law." This Report indicates to the Court and the creditors that any assets owned by the Debtor have no net value to the Debtor or the estate. Thus, the only possible purpose for a corporate Chapter 7 case is not served here as no assets exist to distribute fairly to creditors. As

16

this Court has explained to Ms. Morton in various hearings, this does not necessarily mean that a valid dispute about a lien does not exist, but no bankruptcy purpose exists to justify maintaining the stay in effect because the Trustee has no interest in pursuing that asset. See AUFCMP Church, 184 B.R. at 222 (Court disposed to grant stay relief, but dismissed case *sua sponte* instead).

The Debtor and Ms. Morton also misunderstand the effect of granting a motion for relief from stay. The Court's granting of a motion for relief from stay is not a finding on the validity of the arguments of either party on the underlying issue. A "hearing on a motion for relief from stay is meant to be a summary proceeding, and the validity or merits of claims and defenses are not litigated during the hearing." In re Fontaine, 2011 WL 1930620, *1 (Bankr. N.D. Ga. April 12, 2011). Rather, the purpose of the hearing is simply to determine "whether a creditor has a colorable claim to property of the estate". Grella v. Salem Five Cent Bank, 42 F.3d 26, 32 (1st Cir. 1994); In re Lebbos, 455 B.R. 607, 615 (Bankr. E.D. Mich. 2011); In re Fontaine, 2011 WL 1930620 (Bankr. N.D. Ga. April 12, 2011). As the court in Grella said, "[a]s a matter of law, the only issue properly and necessarily before a bankruptcy court during relief from stay proceedings is whether the moving creditor has a colorable claim; thus the decision to lift the stay is not an adjudication of the validity or avoidability of the claim, but only a determination that the creditor's claim is sufficiently plausible to allow its prosecution elsewhere." 42 F.3d at 34.

An order granting relief from stay, therefore, only finds that the creditor has a colorable claim and that its interest is not adequately protected by the debtor at the time the order is issued or the Debtor has no equity in the property and it is not necessary for a reorganization. See also In re Evans, 786 F.Supp. 2d 347, 355 (D. D.C. 2011). Here, the Trustee made a finding that there was no equity in the property by virtue of his Report of No Distribution. Moreover, because the petition was filed under Chapter 7, and not Chapter 11, HRN is not attempting to reorganize in order to continue to operate. See AUFCMP Church, 184 B.R. at 218. The Court notes that Wilmington established a colorable

17

claim to the property and the right to foreclose. The Wilmington MFR includes the original security deed on the property and numerous assignments which lead to Wilmington as being the current holder of the security deed. The Trustee reported no interest in the property in issue. Importantly, the Debtor could not obtain a discharge in this case because only individuals can obtain a discharge. 11 U.S.C. § 727(a)(1). Without a discharge, no discharge injunction will arise under 11 U.S.C. § 524(a)(2) and Wilmington will be free to pursue its remedies when the case is closed. See 11 U.S.C. §§ 362(c)(1) and 554(c). So the Court's ruling does not determine that HRN has no defenses or deprive HRN or Ms. Morton of any right to contest in another court the authority of Wilmington to conduct the foreclosure. The Court simply ruled that the bankruptcy estate has no further interest in the property or the outcome of the dispute, and the dispute is best left to other courts to resolve. "[T]he existence of a more appropriate forum than the bankruptcy court is 'cause' for relief under Code § 362(d)(1)." AUFCMP Church, 184 B.R. at 218 (cites omitted). Likewise, Ms. Morton's complaint that the Court erroneously lifted the stay on an unsecured debt is misplaced. Ms. Morton may contend that Wilmington is not properly secured. But the Court did not reach that issue and stay relief is not limited to secured claims. See 11 U.S.C. § 362.

**Legal Error.**

Next, to the extent Ms. Morton complains that the Court erred in lifting the stay, a legal error does not justify recusal. The grounds for recusal are set forth in 28 U.S.C. § 455, and legal error is not one of them. "Even assuming for the sake of argument that the Court had made legal errors in this case, legal error does not constitute grounds for recusal without a showing of external personal bias[.]" Szanto v. Marina Market Place One, LLC, 2014 WL 5293088, at *3, (D. Nev. October 15, 2014). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion … in and of themselves … Almost invariably, they are proper grounds for appeal, not for recusal." Liteky v. United States, 510 U.S. 540, 555 (1994). See also Ginsberg v. Evergreen Security Ltd. (In re Evergreen Sec. Ltd.), 570 F.3d 1257, 1274 (11th Cir. 2009). In fact, the Debtor has filed a notice of appeal of the

18

Court's order granting Wilmington relief from the stay, and her contentions of legal error will be considered on appeal.

**Bar Grievance.**

Finally, the Court notes Ms. Morton filed in the Bankruptcy Court a notice of filing a State Bar of Georgia grievance against this Judge, the Trustee and lawyer representing Wilmington. However, "[a] judge is not disqualified merely because a litigant sues or threatens to sue him." Bush v. Washington Mutual Bank FA (In re Bush), 232 Fed.Appx. 852, 854 (11th Cir. 2007) (cites omitted). The same is true about the filing of a bar complaint or complaint of judicial misconduct. See Evergreen, 570 F.3d at 1265. Granting such a motion to recuse "would mean that a litigious *pro se* party such as the Plaintiff would have an effective means to manipulate and needlessly delay the judicial process." In re Dean, 2007 WL 7142579, *2 (Bankr. N.D. Ga. August 22, 2007) (cites omitted). The Court notes that the alleged bar complaint clearly arises out of the undersigned Judge's performance of her judicial duties in the Debtor's bankruptcy case. No other relationship between the undersigned Judge and the Debtor exists. "Under the doctrine of judicial immunity, therefore, there is no colorable basis for the lawsuit." Id. "If the leveling of unsupported accusations is sufficient to render a judge biased and to force recusal, the debtor could conceivably run through all of the Federal and State court judges available to hear his cases in a very short time." In re Bush, 2005 WL 6487198, at *5 (Bank. N.D. Ga. July 14, 2005). Therefore, the filing of a bar grievance against the undersigned Judge by Ms. Morton does not provide a basis for recusal of the Judge.

## CONCLUSION

Neither the Debtor (which is proceeding without counsel) nor Ms. Morton have presented facts which support this Court's recusal. The allegations are mistaken in some instances and result from Ms. Morton's misunderstanding of the function of a Chapter 7 bankruptcy case and the effect of a ruling on a motion for relief from stay. In this case, a corporate entity filed a Chapter 7 case,

19

attempted to proceed without counsel which is not permitted, and in any event is not entitled to a discharge under the Bankruptcy Code.  The Chapter 7 Trustee filed a Report of No Distribution indicating no further interest in the property at issue and no bankruptcy purpose therefore to be served by maintaining the stay in effect.  The issues which Ms. Morton wants to litigate can and should be properly litigated in the state court and lifting the stay for that purpose did not deny her or the Debtor any right to contest Wilmington's right to foreclose.  The Court therefore DENIES the Debtor's and/or Ms. Morton's request for recusal.

### ### END OF ORDER ###

**DISTRIBUTION LIST**

HRN Group, LLC
a/k/a HOMERETENTION
4596 Meadow Creek Path
Lithonia, GA 30038

John Lewis, Jr.
Chapter 7 Trustee
1230 Peachtree St, Ste 1200
Atlanta, GA 30309

Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303